# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ALTEK, INC.** ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | |
| V. ) | CASE NO. _____ |
| ) | |
| **GSH OF ALABAMA, LLC,** ) | |
| **BARBARA STOKES, SCOTT** ) | |
| **STOKES and Fictitious Defendants,** ) | |
| **A, B and C, whether singular or** ) | |
| **plural, being those entities that** ) | |
| **individuals or entities that caused** ) | |
| **or contributed to Plaintiff's** ) | |
| **economic losses**, ) | |
| ) | |
| **DEFENDANTS.** ) | |

## COMPLAINT

COMES NOW, Plaintiff, Altek, Inc., and files its Complaint against GSH of Alabama, LLC, Barbara Stokes, Scott Stokes and Fictitious Defendants A, B and C, in support thereof, shows as follows:

### PARTIES

1. Plaintiff Altek, Inc. ("Altek") is foreign corporation with its principal place of business in Princeton, Indiana.

2. Defendant GSH of Alabama, LLC (hereinafter "GHS") is a limited liability company organized under the laws of the state of Alabama with its principal place of business in Huntsville, Alabama 35801.

3. Upon present information and belief, Barbara Stokes is the Chief Executive Officer of GSH and one of its owners.

4. Upon present information and belief, Scott Stokes is Chief Operating Officer of GSH and one of its owners.

5. Barbara and Scott Stokes are referred to as the Stoke Defendants.

6. Fictitious Parties A, B, and C whether singular or plural, being those individuals or entities that caused or contributed to Plaintiff's economic losses, whose true and correct names are unknown to Plaintiff at this time or their identities as proper party defendants are unknown to the Plaintiff at this time, but will be substituted by amendment when ascertained.

## JURISDICTION AND VENUE

7. Paragraphs 1 through 6 are incorporated herein as if set out in full.

8. Given the amount in controversy and the nature of claims plead *infra*, this Court has subject matter jurisdiction over this matter.

9. Plaintiff brings its complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and other applicable law because the cause of action arose in Madison County, Alabama, which is situated within the district and divisional boundaries of the Northern

District of Alabama.

## FACTS

11. Paragraphs 1 through 10 are incorporated herein as if set out in full.

12. Altek is a nationwide distributor for parts, components, custom controls, and services for industrial applications.

13. GSH, according to its website, designs, builds, delivers and offers on-site construction of mobile and modular commercial and residential structures throughout North America. Additionally, GSH purportedly supplied 125 disaster homes to support disaster housing mission for the Federal Emergency Management Agency ("FEMA").

14. In 2016, on present information and belief, GSH was fulfilling a contract awarded by FEMA that included a requirement to build and deliver Tank and Pump Systems ("TPS"). The TPSs would be used to suppress unexpected fires that might flare up in FEMA mobile housing units. Each TPS essentially consisted of, and housed, a 250-gallon water tank, a pump, and a control system that would activate to send water to a sprinkler system in an adjacent FEMA trailer/mobile housing unit.

15. In or about November 2016, GSH contacted Altek to purchase various components, including relays, timers and circuit breakers, comprising the TPS control systems. Altek shipped the components to GSH, totaling approximately

$77,000. GSH made full payment on this order within 30 days.

16. Once GSH received the components, GSH began to request information from Plaintiff as to how to wire and install the components. Plaintiff's personnel began providing technical assistance to GHS.

17. In November 2016, personnel from Altek visited the GSH assembly facility in Huntsville, Alabama, to see the TPS and to design a more efficient control system so that GSH could deliver on its contract with FEMA. During this meeting GSH told Plaintiff that it had a contract with FEMA to produce approximately 800 TPS units by April 2017.

18. Later that November, Altek designed and constructed a "Master Control Panel" prototype to be delivered and used in Defendant GSH's TPS. Altek developed the Master Control Panel based on purportedly current FEMA specifications and discussions between Altek and GHS. The Master Control Panel neatly integrated the control components and, in so doing, significantly shortened the time that it would take GHS to install them in the TPS. At GHS' request, Altek started preparing for a production run of the control panels.

19. Altek and GHS entered a written agreement (the "Contract") effective January 3, 2017 for the production of 773 Master Control Panels. As production progressed, GHS requested modifications to the functionality and components of the Master Control Panel, which Altek accommodated. In fact, Altek made two

additional visits to Huntsville on or about January 23, 2017 and February 15, 2017, to modify the TPS units that had already shipped. Based on the size of the total order, this was done at no additional charge to Defendant GHS.

20. Per the Contract, Altek was to begin sending weekly shipments increasing up to 50 control panels per week as component availability leveled. The Contract plainly states that several components were not stock items from Altek's supply manufacturers and in order to meet delivery requirements, commitments had to be made by Altek to the manufacturers to order parts and the orders could not be canceled or returned.

21. The payment terms of the Contract state, "At each shipment, regardless of quantity, Altek will send notice of shipment and invoice to GSH and their third party payer, which will remit payment of invoices via Direct Wire to Regions Bank for depositing into Alteks [sic] account." The agreed to price of the Master Control Panels was as follows:

> Master Control Panel with all components provided by Altek at a price of $1,424.79 each.
>
> Master Control Panel with all components except the Potter Charging units provided by Altek at a price of $1,411.88 each.

22. During production of the Master Control Panels, Altek incurred additional costs to make modifications to its production floor and also purchased new equipment.

23. Altek began production and started shipping TPS units to GSH as agreed.

24. On March 28, 2017, Altek received a letter from Barbara Stokes on behalf of GSH that FEMA had canceled the contract for the TPS and provided instructions and deadlines for vendors to follow in order to get paid for the expenses incurred to date and requested a settlement proposal by April 10, 2017.

25. On April 7, 2017, Altek submitted the information as requested in the March 28th letter from GSH. In the months that followed, GSH indicated to Altek, through a series of emails and texts, that everything was in process and FEMA was going through its evaluation process.

26. On September 19, 2017, Altek received an email from GSH stating that the government said payment would be made in October.

27. On October 19, 2017, the president of Altek, Karl Koch, received a text message from GSH requesting Altek to state the lowest offer it would accept and "if approved, you will have your money next Friday." To this point, Altek had expected to be paid in full.

28. Later that day, Mr. Koch had a phone conversation with Barbara Stokes wherein Ms. Stokes informed him that per the contract GSH had with FEMA, GSH was required to submit its lowest offer and disperse funds from the payment they received.

29. Altek, through its president, Karl Koch, attempted to negotiate with GHS and Barbara Stokes to reach a resolution regarding the funds owed to Altek. However, the negotiations stalled, and they failed to reach an agreement.

30. In total, Altek delivered 100 TPS units pursuant to the Contract. GSH paid for 65 of them. GSH and Stokes Defendants, however, still owe Altek for the 35 units already shipped and received by GSH ($44,464.70), the completed units not yet shipped ($7,604), the parts for the remaining units ($158,907) plus interest and costs, among other damages.

31. Defendants received payment from FEMA. Altek never received such payment from Defendants.

32. According to the Contract, Defendants agreed that if they did not pay Altek within the terms of the Contract, Defendants would pay any court costs or attorney fees.

33. Stokes Defendants are owners of GSH of Alabama, Inc. GSH is undercapitalized and does not follow accepted formalities regarding the conduct of its business.

34. GSH is organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of Stokes Defendants. The company observes no corporate formalities.

35. The Stokes Defendants do not observe a distinction between their

personal and the alleged company finances. That is, there is a complete lack of separation between the Stoke Defendants and GSH's expenditures. GSH is, therefore, an alter ego of the Stoke Defendants and its creation as an entity is merely a ruse designed to escape personal liability for the individuals.

## CAUSES OF ACTION

### Count I
### Breach of Contract

36. Plaintiff repeats and re-alleges paragraphs 1 through 35 as if fully set out herein.

37. There is a written Contract between the Parties.

38. Plaintiff performed under the terms of the Contract and has made demand on Defendants for satisfaction of its performance under same.

39. All conditions precedent to Defendants' performance under the contract have occurred and none remain.

40. Despite demand, Defendants have failed and/or refused to perform under the contract.

41. Defendants breached their Contract with Plaintiff.

42. As a proximate and direct consequence of Defendants' breach of Contract, Plaintiff has suffered damages, both compensatory and consequential.

WHEREFORE, Plaintiff demands from Defendants compensatory damages, contractually-obligated attorney fees, costs, interest, and such other, further and

different relief, including equitable, as the Court deems proper.

## Count II
## Unjust Enrichment

43. Plaintiff repeats and re-alleges paragraphs 1 through 35 as if fully set out herein.

44. Defendants accepted funds from FEMA which it retains and which, in equity and good conscience, ought to be remitted to Plaintiff.

45. By their actions, Defendants have been unjustly enriched, and it would be inequitable to allow Defendants to retain these benefits.

WHEREFORE, Plaintiff seeks an Order of Injunction from this Court directing Defendants to conduct an equitable accounting over all funds unjustly retained, create a constructive trust over said sums, and disgorge the *res* of said constructive trust to Plaintiff via resulting restitution.

## Count III
## Promissory Fraud

46. Plaintiff repeats and re-alleges paragraphs 1 through 35 as if fully set out herein.

47. Defendants made promises to Plaintiff, verbally and through writings, regarding the contract with FEMA and its status as a bona fide contractor and its intent to carry out the terms of the contract between the Parties.

48. Said promises induced Plaintiff to enter into an agreement which

required that it expend over $150,000 on parts and equipment.

49. Defendants knew at the time of the representations which induced Plaintiff to act that would not keep with those promises.

50. The false promises made induced Plaintiff to act to its detriment and has, as a consequence, suffered economic harm.

WHEREFORE, Plaintiff demands from Defendants compensatory and punitive damages, costs, interest, and such other, further and different relief, including equitable, as the Court deems proper.

## Count IV
## Negligent Misrepresentation

51. Plaintiff repeats and re-alleges paragraphs 1 through 35 as if fully set out herein.

52. Defendants made promises to Plaintiff, verbally and through writings, regarding the contract with FEMA and its status as a bona fide contractor and its intent to carry out the terms of the contract between the Parties.

53. Said promises induced Plaintiff to enter into an agreement which required that it expend over $150,000 on parts and equipment.

54. Defendants should have known at the time of the representations which induced Plaintiff to act that could not keep with those promises.

55. The promises made induced Plaintiff to act to its detriment and has, as a consequence, suffered economic harm.

WHEREFORE, Plaintiff demands from Defendants compensatory damages, costs, interest, and such other, further and different relief, including equitable, as the Court deems proper.

Respectfully submitted this the 28th day of February 2018.

                                           s/ Eric J. Artrip
                                           D. Anthony Mastando (ASB-0893-X32B)
                                           Eric J. Artrip (ASB-9673-I68E)
                                           MASTANDO & ARTRIP, LLC
                                           301 Washington Street, Suite 302
                                           Huntsville, Alabama 35801
                                           Phone:    (256) 532-2222
                                           Fax:         (256) 513-7489
                                           tony@mastandoartrip.com
                                           artrip@mastandoartrip.com

DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL

GSH OF ALABAMA, LLC
c/o Barbara Stokes
4800 WHITESBURG DRIVE STE 30-351
HUNTSVILLE, AL 35802

Barbara Stokes
4800 WHITESBURG DRIVE STE 30-351
HUNTSVILLE, AL 35802

Scott Stokes
4800 WHITESBURG DRIVE STE 30-351
HUNTSVILLE, AL 35802

                                        s/ Eric J. Artrip
                                        Eric J. Artrip